**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ERICA M.,

                                    Plaintiff,                              No. 5:18-CV-456
                                                                            (CFH)
            v.

ANDREW SAUL,[1]

                        Defendant.

_____

**APPEARANCES:**                                **OF COUNSEL:**

Olinsky Law Group                               HOWARD D. OLINKSY, ESQ.
300 S. State Street
Suite 420
Syracuse, New York 13202
Attorney for Plaintiff

Social Security Administration                  SIXTINA FERNANDEZ, ESQ.
Office of Regional General Counsel              Special Assistant U.S. Attorney
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

        Plaintiff Erica M. brings this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security ("the Commissioner") denying her

application for disability insurance benefits and supplemental security income ("SSI")

_____

        [1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the
defendant in this action.

benefits.  Dkt. No. 1 ("Compl.").[2]  Plaintiff moves for a finding of disability or remand for

a further hearing, and the Commissioner cross moves for a judgment on the pleadings.

Dkt. Nos. 11, 12.  For the following reasons, the determination of the Commissioner is

affirmed.


## I. Background

Plaintiff was born in 1981, and completed eleventh grade.  T. 172, 641.[3]  She did

not receive her GED.  Id. at 641.  She resides with another individual, and her aunt acts

as her caretaker.  Id. at 640-41.  Plaintiff previously worked as a cashier at a grocery

store and as a home health aide, as well as at Macy's and KFC.  Id. at 642-44.

On October 22, 2009, plaintiff protectively filed a Title II application for disability

insurance benefits.  T. 152-54.  On that same day, plaintiff also protectively filed a Title

XVI application for SSI benefits.  Id. at 159-62.  Both applications alleged an onset date

of July 7, 2006.  Id. at 152-54, 159-62.  The applications were initially denied on

February 3, 2010.  Id. at 111.  Plaintiff requested a hearing, and a hearing was held on

November 23, 2010 before Administrative Law Judge ("ALJ") Thomas P. Tielens.  Id. at

64-97.  On January 21, 2011, ALJ Tielens issued an unfavorable decision.  Id. at 26-37.

On June 8, 2011, the Appeals Council granted plaintiff's request for review.  Id. at 102-

---

[2] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 5.

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the
Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the
administrative transcript, not the pagination generated by CM/ECF.

06.  On September 1, 2011, the Appeals Council issued an unfavorable decision.  Id. at

1-3.  On November 4, 2011, plaintiff filed a request for a hearing.  Id. at 1017-18.

Because the Appeals Council had already issued an unfavorable decision, plaintiff

commenced an action in federal court.  Id. at 848-75.  On March 11, 2013, this Court

remanded the case for further proceedings.  See id.

On June 23, 2013, plaintiff appeared before ALJ Edward Pitts for a second

hearing.  T. 683-737.  On September 19, 2013, ALJ Pitts issued an unfavorable

decision.  Id. at 924-40.  Plaintiff appealed ALJ Pitts' decision, and the Appeals Council

remanded the case to the ALJ.  Id. at 951-52.  On remand, the Appeals Council

ordered the ALJ to:

> • Obtain additional evidence concerning [plaintiff's] impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence . . . . The additional evidence may including, if warranted and available, consultative mental and physical examinations with psychological testing and medical source statements about what [plaintiff] can still do despite the impairments.
>
> • If necessary, obtain evidence from a medical expert to clarify the nature and severity of [plaintiff']s mental impairments . . . .
>
> • Give consideration to [plaintiff's] cognitive impairment at step 2 of the sequential evaluation
>
> • Further evaluation [plaintiff's] mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a and appropriate rationale for each of the functional areas . . . .
>
> • Give further consideration to the treating and nontreating source opinions made by Dr. Shapiro and

Dr. Buchan pursuant to 20 CFR 404.1527 and 416.927 . . . and explain the weight given to such opinion evidence. As appropriate, the [ALJ] may request the treating and nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what [plaintiff] can still do despite the impairments . . . . The [ALJ] may enlist the aid and cooperation of [plaintiff's] representative in developing evidence from [plaintiff's] treating sources.

- Give further consideration to [plaintiff's] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations . . . .

- Further evaluation [plaintiff's] subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms . . . .

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [plaintiff's] occupational base . . . . The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy . . . . Further, before relying on the vocational expert evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles and its companion publication [. . . . ]

Id. at 955. On September 12, 2016, plaintiff attended a third hearing before ALJ Marie Greener. Id. at 634-82. On December 19, 2016, ALJ Greener issued an unfavorable decision. Id. at 604-18. On February 14, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. Id. at 563-55. Plaintiff commenced this action on April 13, 2018. See

4

Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied, or it was not supported by substantial evidence.  See

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464,

467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that

in the record one can find "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir.

2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations

omitted)).  The substantial evidence standard is "a very deferential standard of review

. . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable

factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683

F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is

reasonable doubt as to whether the Commissioner applied the proper legal standards,

the decision should not be affirmed even though the ultimate conclusion is arguably

supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148

(N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

**C. ALJ Decision**

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since July 7, 2006, the alleged onset date. T. 608. The ALJ found at step two that plaintiff had the severe impairments of lumbar spine degenerative disc disease, asthma, borderline intellectual functioning, affective disorder, and personality disorder. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 609. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform

> light work[4] as defined in 20 CFR 404.1567(b) and 416.967(b) except she needs to change position at approximately one-hour intervals (She can sit for one hour, then would need to stand for about five minutes. She can then resume the former position). Similarly, [plaintiff] can stand for one hour, but would then need to sit for about five minutes, and she does not need to leave the workstation during the change in position. In addition, she must avoid concentrated exposure to respiratory irritants. [Plaintiff] is further limited to work that does not require more than simple, short interactions with supervisors, co-workers or the public, and although she may work in proximity to others, the tasks do not require working in conjunction with others and predominantly involve working with objects rather than people. Finally, [plaintiff] is limited to routine daily tasks and duties in the same workplace which do not significantly change in pace or location on a daily basis.

Id. at 612. At step four, the ALJ found that plaintiff had no past relevant work. Id. at

---

[4] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," as well as work that "requires a good deal of walking or standing . . . or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

616.  At step five, the ALJ determined that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  Id. at 617.   Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from July 7, 2006, through the date of this decision."  Id. at 618.

### D. Arguments

Plaintiff first argues that the RFC is not supported by substantial evidence because the ALJ failed to properly weigh the medical opinions of plaintiff's treating providers.  See Dkt. No. 11 at 16-23.  Plaintiff also argues that the ALJ failed to account for all of the Appeals Council's orders on remand.  Id. at 23-25.  Conversely, the Commissioner first argues that the ALJ properly evaluated the opinion evidence in determining the RFC.  See Dkt. No. 12 at 6-17.   The Commissioner also argues that the ALJ followed the Appeals Council's orders on remand.  Id. at 17-19.

### E. Relevant Medical Evidence

### 1. Kalyani Ganesh, M.D.

On January 18, 2010, plaintiff met with Dr. Ganesh for an internal medicine examination.  Plaintiff reported lower back and middle back pain since 2002.  T. 294.  She indicated that the pain was both sharp and aching, and persisted all the time.  Id.  Plaintiff described the pain as radiating down her right leg to her foot.  Id.  Plaintiff indicated that she was able to cook, clean, and can do laundry two days a week.  Id. at

295.  Plaintiff also reported that she showered and dressed two days a week.  Id.

Dr. Ganesh observed that plaintiff appeared to be in no acute distress.  T. 295.
Although her gait was normal, she could not walk on her heels or toes.  Id.  Plaintiff did
not use an assistive device, and did not need help changing for the examination or
getting on and off the examination table.  Id.  Plaintiff was able to rise from her chair
without difficulty.  Id.  Dr. Ganesh opined that plaintiff had no gross physical limitations
sitting, standing, or walking.  Id. at 297.  Dr. Ganesh further opined that plaintiff had
mild limitations lifting, carrying, pushing, and pulling.  Id.

Plaintiff again met with Dr. Ganesh on November 19, 2015 for an orthopedic
examination.  T. 1738.  Plaintiff reported that had been diagnosed with a herniated disc,
and had been receiving nerve blocks for two years.  Id.  Plaintiff indicated that she
experienced a constant throbbing pain in her lower back every day.  Id.  She stated that
it "hurt[ ] to do prolonged standing and bending."  Id.  Dr. Ganesh observed that plaintiff
appeared to be in no acute distress.  Id. at 1739.  Although plaintiff's gait was normal,
she still could not walk on her heels or toes without difficulty.  Id.  Plaintiff could not
squat, but her station was normal.  Id. She did not use assistive devices, and did not
need help changing for the examination or getting on and off the examination table.  Id.
Plaintiff was able to rise from her chair without difficulty.  Id.

Dr. Ganesh observed that plaintiff's hand and finger dexterity was intact, and her
grip strength was 5/5 bilaterally.  T. 1739.  Plaintiff had full flexion, extension, lateral
flexion, and rotary movements bilaterally.  Id.  She had no cervical or paracervical pain
or spasm, and no trigger points.  Id.  Dr. Ganesh opined that plaintiff had no limitations

sitting, standing, and walking.  Id. at 1740.  Dr. Ganesh further opined that plaintiff had

mild to moderate limitations lifting, carrying, pushing, and pulling.  Id.  Dr. Ganesh

recommended that plaintiff avoid known respiratory irritants.  Id.


### 2. Debra A. Buchan, M.D.

On December 29, 2009, Dr. Buchan completed a medical report concerning

plaintiff's estimated functional limitations.  T. 1464.  She opined that plaintiff was

moderately limited[5] in her ability to walk; stand; sit; push, pull or bend; lift or carry; and

climb stairs.  Id.  Dr. Buchan further opined that plaintiff had no evidence of limitations

in her ability to see, hear, or speak; use her hands; or use public transportation.  Id.

On February 2, 2013, Dr. Buchan completed a second medical report, wherein

she stated that plaintiff was very limited[6] in her ability to walk; stand; sit; push, pull or

bend; lift or carry; and climb stairs.  T. 1790.  Plaintiff had no limitations seeing, hearing,

or speaking; using her hands; or using public transportation.  Id.


### 3. Desiree L. Woods, RPAC

On February 13, 2013, PA Woods competed a physician's medical report.  PA

Woods indicated that plaintiff had been client of the practice since October 2012.  T.

1602.  She indicated that plaintiff suffered from low back pain and pain radiating into

both of her legs.  Id.  The pain was worse on plaintiff's right leg.  Id.  PA Woods opined

---

[5] "Moderately limited" is defined as the ability to perform from 2 to 4 hours per day.  T. 1464.

[6] "Very limited" is defined as the ability to perform 1to 2 hours per day.  T. 1790.

that plaintiff was very limited in her ability to walk; stand; push, pull or bend; lift or carry; and climb stairs. Id. at 1603. PA Woods further opined that plaintiff was moderately limited in her ability to sit and use public transportation. Id. Plaintiff had no evidence of limitations in her ability to see, hear, or speak and use her hands. Id. PA Woods indicated that plaintiff could not lift more than five to ten pounds, and needed to change positions frequently. Id.

### 4. Jeanne A. Shapiro, Ph.D

On January 18, 2010, plaintiff met with Dr. Shapiro for a consultative psychiatric examination. T. 289. Plaintiff reported difficulties falling asleep and noted that she usually wakes up six times each night. Id. at 290. She also reported a decreased appetite that lead to a twenty-pounds weight loss, as well as fatigue and the temptation to cut herself. Id. Plaintiff stated that she was unmotivated and lethargic, and did not want anyone to talk to her. Id. She often isolated herself in her room. Id. Although she was not suicidal at the time, she indicated that she had been in the past. Id. Plaintiff complained of memory and concentration problems, and stated that she sees ghosts daily. Id.

Dr. Shapiro observed that plaintiff's demeanor and responsiveness to questions was cooperative. T. 291. Plaintiff's manner of relating, social skills, and overall presentation was adequate. Id. Plaintiff was appropriately dressed, and her personal hygiene and grooming were good. Id. Her eye contact was poor. Id. Plaintiff's speech intelligibility was fluent, and her quality of voice was clear. Id. Plaintiff's thought

processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking. Id. Plaintiff's mood was depressed, and Dr. Shapiro noted that plaintiff appeared sad. Id. Dr. Shapiro observed that plaintiff's affect was constricted, and was somewhat reduced in intensity compared to her thoughts and speech. Id. Plaintiff's sensorium was clear, and she was oriented x3. Id. Plaintiff's attention and concentration were intact, and she was able to recall three objects immediately and after two minutes, as well as restate five digits forward and three digits backward. Id. Her intellectual functioning was estimated to be in the deficient range, and her general fund of information appeared to be somewhat limited. Id. Plaintiff's insight and judgment were fair. Id.

As to her mode of living and current functioning, plaintiff indicated that she was able to dress, bathe, and groom herself. T. 291 Plaintiff reported that if she was not in too much pain she could cook and prepare food, clean, do laundry, and shop. Id. at 291-92. She indicated that she could not manage her money or drive, but could take public transportation "some of the time by herself and other times with her friend." Id. at 292. Plaintiff stated that she got along well with friends and family, and generally spent her days doing chores, talking to friends, and watching television. Id.

Dr. Shapiro opined that plaintiff may have difficulty adequately understanding and following some instructions and directions, as well as completing some tasks due to memory, concentration, and cognitive deficits. T. 292. She further opined that plaintiff may have difficulty interacting appropriately with others due to social withdrawal. Id. She stated that attending work and maintaining a schedule may be difficult for plaintiff

due to lack of motivation and lethargy.  Id.  Dr. Shapiro noted that plaintiff does not appropriately manage stress.  Id.  Dr. Shapiro recommended that plaintiff be referred for more comprehensive treatment to a psychiatrist or a clinical psychologist.  Id.

### 5. Dennis Noia, Ph.D

On November 19, 2015, plaintiff met with Dr. Noia for a consultative psychiatric examination.  T. 1748.  Plaintiff reported that she usually woke up three times per night, and that her appetite had increased.  Id. at 1749.  She indicated that when she was depressed, her symptoms included dysphoric moods, psychomotor retardation, crying spells, loss of usual interests, increased irritability, fatigue and loss of energy, diminished self esteem, problems with memory, problems with concentration, and diminished sense of pleasure.  Id.  When manic, she experienced more talkative and pressured speech, increased goal-directed activity, distractability, psychomotor agitation, decreased need for sleep, and excessive involvement in pleasurable activities.  Id.

Dr. Noia observed that plaintiff's eye contact was appropriate.  T. 1750.  Her affect was congruent with her thoughts and speech.  Id.  Plaintiff's mood was calm, and she appeared relaxed and comfortable.  Id.  Her attention and concentration was intact, and she was able to count, perform simple calculations, and serial 3s.  Id.  Plaintiff's recent and remote memory skills were mildly impaired, and she was able to recall three objects immediately and two after five minutes.  Id.  She could restate five digits forward and two digits backward.  Id.  Plaintiff's intellectual functioning was estimated to be in

the low average range, and her general fund of information appeared to be appropriate to experience.  Id.  Plaintiff's insight and judgment were good.  Id.

As to mode of living and current functioning, plaintiff reported that she could dress, bathe, and groom herself.  T. 1750.  She reported that she could not cook and prepare food, clean, do laundry, or shop because of her medical problems.  Id.  She did not drive and could not use public transportation.  Id.  Plaintiff indicated that she has difficulty getting along with family and friends.  Id.  She spent her days resting, reading, watching television, and listening to the radio.  Id. at 1751.

Dr. Noia opined that plaintiff had no limitations understanding and following simple instructions and directions, performing simple and complex tasks, attending to a routine and maintaining a schedule, learning new tasks, and making appropriate decisions.  T. 1751.  Plaintiff had mild limitations maintaining attention and concentration for tasks.  Id.  Dr. Noia indicated that plaintiff appeared to be able to relate to and interact moderately well with others.  Id.  Plaintiff had moderate limitations in her ability to deal with stress.  Id.  Dr. Noia indicated that plaintiff appeared to be intellectually capable of managing her money.  Id.  Dr. Noia indicated that plaintiff's prognosis was guarded, but with continued intervention and support, there was hope she could find symptom relief and maximize her abilities.  Id.


### 6. David Kang, M.D. and Deanna Raymond, RPA-C

On November 5, 2010, Dr. Kang co-signed a medical source statement completed by RPA-C Deanna Raymond.  T. 430.  PA Raymond indicated that plaintiff

15

had been treating with a therapist once a week for forty-five minutes and once a month with a prescriber for thirty minutes.  Id.  She indicated that plaintiff could maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions.  Id. at 431.  Plaintiff was limited but satisfactory in her ability to remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; and make simple work-related decisions.  Id.  Plaintiff was seriously limited in her ability to work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a routine work setting.  Id.  Plaintiff was unable to meet competitive standards in her ability to deal with normal work stress.  Id.  It was unclear whether she could maintain attention for two hour segments.  Id.  PA Raymond indicated that work stress made plaintiff "lash out at everybody and wanna fight."  Id.  She indicated that she often "forg[o]t everything that was said," and did not want to be around co-workers.  Id.

PA Raymond opined that plaintiff could maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  T. 432.  Plaintiff was

16

limited in her ability to interact appropriately with the general public and use public transportation.  Id.  Plaintiff was seriously limited in her ability to travel to an unfamiliar place.  Id.  PA Raymond indicated that plaintiff would be off-task 10 percent of the work day.  Id.

### F. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  "This rule applies equally to retrospective opinions given by treating physicians."  Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted).  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the

opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The

report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

As an initial matter, the Court notes that "[a]n ALJ is not required to rely on any one opinion, so long as she is relying on the evidence as a whole to inform her decision." Susan M. v. Comm'r of Soc. Sec., No. 1:18-CV-0623 (GTS), 2019 WL 2754480, at *7 (N.D.N.Y. July 2, 2019) (citing inter alia Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Moreover, "[w]here . . . the record contains

sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, . . . a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) (citations omitted).

In concluding that plaintiff could perform light work with certain physical restrictions, the ALJ relied primarily on Dr. Ganesh's consultative examinations, which he granted "some weight" because the record supported "somewhat greater limitations." T. 614. The ALJ indicated that Dr. Ganesh's examinations in January 2010 and November 2015 produced similar, yet generally unremarkable results. Id. at 613. Although plaintiff's gait was normal on both occasions, she could not walk on her heels or toes without difficulty. Id. at 295, 1739. Plaintiff also had a restricted range of motion in her lumbar spine, but demonstrated negative straight leg raises bilaterally. Id. at 296, 613, 1739. Dr. Ganesh opined that plaintiff had mild limitations lifting, carrying, pushing, and pulling in 2010, and mild to moderate limitations in those areas in 2015. See id. at 297, 1740. Moreover, the Court agrees with the Commissioner that Dr. Ganesh's finding of mild to moderate limitations is consistent with light work. See Dkt. No. 12 at 9 (citing inter alia Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (affirming RFC for light work with occasional climbing balancing, stooping, kneeling, crouching, and crawling, where CE opined that plaintiff had a "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting."); see also Randy L. B. v. Comm'r of Soc. Sec., No. 5:18-CV-0358 (GTS), 2019 WL 2210596, at *7 (N.D.N.Y. May 22, 2019)

("[T]here is voluminous legal authority . . . that supports the ALJ's finding of light work based in part on the mild to moderate limitations opined by [the consultative examiner].") (citing Katherine Marie S. v. Comm'r of Soc. Sec., No. 6:18-CV-0233 (TWD), 2019 WL 1427456, at *7 (N.D.N.Y. Mar. 29, 2019) ("Moreover, courts in this Circuit have found that 'postural limitations of moderate or lesser severity are generally consistent with the demands of light work."); Gurney v. Colvin, No. 14-CV-668S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) ("Indeed, moderate limitations . . . are frequently found to be consistent with an RFC for a full range of light work.") (citing cases). Consistent with her belief that Dr. Ganesh's opinion was not restrictive enough for plaintiff's "somewhat greater limitations," the ALJ credited PA Woods' opinion that plaintiff needed to change positions — albeit, she did not find support in the record for the need to change positions "frequently." T. 614, 1603. In that vein, the ALJ required that plaintiff

> change position at approximately one-hour intervals (She can
> sit for one hour, then would need to stand for about five
> minutes. She can then resume the former position). Similarly,
> [plaintiff] can stand for one hour, but would then need to sit for
> about five minutes, and she does not need to leave the
> workstation during the change in position.

Id. at 612. The physical RFC determination is consistent with plaintiff's medical records, which demonstrate that plaintiff had relatively normal lumbar MRIs in December 2010, August 2012, and August 2016. Id. at 549, 613, 1548-49, 2183. To the extent that the MRIs showcased minor abnormalities, the ALJ noted them in her analysis. See id. at 613 (December 2010: noting that the MRI "revealed a grade 1 retrolisthesis of L5 over S1 associated with 'mild' bilateral neural foraminal narrowing,

but no nerve root impingement.  There was also a 'small' annular tear and 'minimal' disc bulge at L4-5, with no significant spinal canal stenosis or neural foraminal stenosis."), (August 2012: noting that the MRI was "normal except for some 'early' degenerative disc change of L5-S1, with 'slight' central disc bulging, but no stenosis.") (citing id. at 549, 1548-49).

To the extent that plaintiff argues that the ALJ erred in failing to grant more weight to PA Woods' opinion concerning plaintiff's other physical limitations, the Court disagrees.  As the ALJ set forth, PA Woods' opinion that plaintiff was limited in her ability to lift more than five to ten pounds, sit for more than two-to-four hours a day, or stand/walk for more than one-to-two hours per day, see T. 1603, was inconsistent with Dr. Ganesh's consultative examinations which showed that plaintiff had full strength and range of motion in her upper and lower extremities, and opined, at most, mild to moderate limitations in plaintiff's ability to lift, carry, push, or pull.  Id. at 295, 1739-40. PA Woods' limitations were also inconsistent with plaintiff's diagnostic imaging, including the relatively normal MRI results, as well as a March 2015 electrodiagnostic study of plaintiff's right lower extremity that provided normal results and "no evidence of an acute or chronic lumbar motor radiculopathy or plexopathy."  Id. at 549, 1548-49, 2180, 2183.  The ALJ also properly took into account plaintiff's limited treating relationship with PA Woods, i.e., nearly four months.  See id. at 614, 1602.  Moreover, the ALJ was not obligated to assess PA Woods' opinion as that of a treating source subject to the treating physician rule because of her role as a physician's assistant. See King v. Comm'r of Soc. Sec., 350 F. Supp. 3d 277, 282 (W.D.N.Y. 2018), appeal

dismissed (Apr. 22, 2019) ("Because they are not acceptable medical sources pursuant to the Regulations, physician assistants cannot be considered treating sources subject to the treating physician rule.").  To the extent that plaintiff argues that the ALJ only addressed plaintiff's diagnostic imaging and "failed to consider the extensive record as a whole," the Court finds this argument misplaced.  See Dkt. No. 11 at 22.  "An ALJ need not, however, explicitly address each and every statement made in the record that might implicate her evaluation of a claimant's credibility as long as 'the evidence of record permits us to glean the rationale of an ALJ's decision.'"  Martes v. Comm'r of Soc. Sec., 344 F. Supp. 3d 750, 767 (S.D.N.Y. 2018) (quoting Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order)); see also Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 580 (S.D.N.Y. 2018) (concluding that although the ALJ's credibility determination "did not explicitly address the side effects of [plaintiff's] medications, there is ample evidence in the opinion and the record to 'glean the rationale of the ALJ's decision.'") (citation omitted).  The ALJ's decision demonstrates that she assessed the entire record as a whole in determining how plaintiff's physical limitations affected her RFC.  See T. 612-14.  As such, the Court concludes that the ALJ properly weighed PA Woods' opinion.

With regard to Dr. Buchan, plaintiff argues that the ALJ improperly weighed Dr. Buchan's December 2009 and February 2013 assessments.  In affording Dr. Buchan's opinions "little to no weight," the ALJ reasoned that "[t]he limitations she describe[d], particularly in 2013, [were] so extreme, they would not be compatible with anything but bed rest, which is clearly unsupported by the objective medical evidence of record."  T.

614.  To be sure, it is well-settled that "[t]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."  Morgan v. Colvin, 592 F. App'x 49, 49 (2d Cir. 2015) (summary order).  Although the Court finds the ALJ's comment regarding plaintiff's limitations questionable at best, the Court finds the error harmless as the ALJ provided "other good reasons" for discounting Dr. Buchan's opinions, including that they were "unsupported by the objective medical evidence of record."  T. 614; see Prue v. Comm'r of Soc. Sec., No. 2:13-CV-13, 2014 WL 37669, at *5 (D. Vt. Jan. 6, 2014) (deciding that the ALJ gave "other good reasons, supported by substantial evidence, for the weight assigned" to plaintiff's medical providers, including whether the opinions were consistent with the provider's treatment notes and other evidence in the record).

    Although plaintiff may have interpreted the medical evidence in a different manner, "the Court cannot conclude that the ALJ erred as a matter of law or that he arrived at an RFC determination that is not supported by substantial evidence" with regard to plaintiff's physical limitations as substantial evidence exists demonstrating that plaintiff can perform light work with certain exertional limitations.  Crimes v. Colvin, No. 15-CV-308-FPG, 2016 WL 4147291, at *5 (W.D.N.Y. Aug. 3, 2016) (citing Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) ("A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.").

    As to plaintiff's mental limitations, the ALJ limited plaintiff to

> work that does not require more than simple, short interactions
> with supervisors, co-workers or the public, and although she
> may work in proximity to others, the tasks do not require
> working in conjunction with others and predominantly involve

> working with objects rather than people. Finally, [plaintiff] is limited to routine daily tasks and duties in the same workplace which do not significantly change in pace or location on a daily basis.

T. 612. In making that determination, the ALJ relied on, to some extent, Dr. Shapiro's opinion. Id. at 614. The ALJ stated that "Dr. Shapiro opined that [plaintiff] 'may have difficulty adequately understanding and following some instructions and directions as well as completing some tasks due to memory, concentration, and cognitive deficits.'" Id. The ALJ noted that Dr. Shapiro also thought that plaintiff might "'have difficulty interacting appropriately with others due to social withdrawal,'" and that plaintiff "did not 'appropriate manage stress' and may have difficulty attending work or maintaining a schedule 'due to lack of motivation and lethargy.'" Id. The ALJ found Dr. Shapiro's limitations inconsistent with both her examination findings, as well as plaintiff's reported activities of daily living. Id. Although "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves," Battease v. Comm'r of Soc. Sec., No. 3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal quotations omitted), the Court concludes that the ALJ did not err in determining that plaintiff's reports that she could dress, bathe, and groom herself, and cook, do laundry, and shop if she was not in too much pain were inconsistent with Dr. Shapiro's more restrictive mental limitations. Id. at 291, 614. The Court notes that plaintiff also reported that she got along well with friends and family, and spent her days performing chores, talking to friends, and watching television. Id. at 292. Thus, the ALJ's reliance, in part, on plaintiff's activities of daily living was not in

25

error.  See Martone, 70 F. Supp. 2d at 153 ("In summary, the objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations. Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

The ALJ also credited Dr. Shapiro's January 2010 mental status examination, wherein she observed that plaintiff's demeanor and responsiveness to questions was cooperative, and her manner of relating, social skills, and overall presentation was adequate.  T. 291, 615.  Although plaintiff exhibited poor eye contact, her speech intelligibility was fluent and her quality of voice was clear.  Id.  Plaintiff's thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking.  Id.  Although plaintiff's mood was depressed and she appeared sad, her sensorium was clear and she was oriented x3.  Id.  Dr. Shapiro found that plaintiff's attention and concentration were intact, and she was able to complete simple calculations.  Id.  Dr. Shapiro's examination was generally consistent with Dr. Noia's November 2015 mental status examination, wherein he observed that plaintiff's demeanor and responsiveness to questions was cooperative, and her manner of relating, social skills, and overall presentation was adequate.  Id. at 1749-50. Plaintiff's eye contact was appropriate, and her affect was congruent with her thoughts and speech.  Id. at 1750.  Her attention and concentration was intact, and she was able to count, perform simple calculations, and serial 3s.  Id.  Plaintiff's recent and remote memory skills were mildly impaired, and she was able to recall three objects

immediately and two after five minutes.  Id.  She could restate five digits forward and two digits backward.  Id.  Plaintiff's intellectual functioning was estimated to be in the low average range, and her general fund of information appeared to be appropriate to experience.  Id.  Plaintiff's insight and judgment were good.  Id.  Dr. Noia ultimately concluded that plaintiff had no limitations understanding and following simple instructions and directions, performing simple and complex tasks, attending to a routine and maintaining a schedule, learning new tasks, and making appropriate decisions; mild limitations maintaining attention and concentration for tasks; and moderate limitations in her ability to deal with stress.  Id. at 1751.  Plaintiff appeared to be able to relate to and interact moderately well with others.  Id.

Dr. Shapiro and Dr. Noia's findings are also generally consistent with the medical records of Celia Kamps, LCSW.  Ms. Kamps indicated in March 2010 that although plaintiff was limited in her ability to sustain concentration and persistence and engage in social interaction, she could maintain attendance and punctuality, could sustain a routine with reminders, and work with others until they annoyed her.  T. 1466.  In October 2010, Ms. Kamps indicated that plaintiff had no limitations in her ability to engage in social interaction, and that she could maintain attendance, but may need step-by-step directions.  Id. at 1467.  Plaintiff further had no limitations in her ability to engage in social interaction in April 2011.  Id. at 1469.  Although the ALJ afforded Ms. Kamps' records "little weight," plaintiff's mental RFC reflects the limitations she set forth, including limiting plaintiff to short, simple interactions with supervisors, co-workers and the public and routine, daily tasks that do not involve significant changes in pace and

location.  Id. at 612.

Insofar as plaintiff argues that the ALJ improperly weighed Dr. Kang's opinion, the Court agrees with the Commissioner that the ALJ correctly granted "little weight" to Dr. Kang's co-signature.  Plaintiff is correct that courts in this Circuit have concluded that "[w]here the opinion of a treating health care provider who is not an acceptable medical source is co-signed by a treating health care provider who is an acceptable medical source, it is generally entitled to controlling weight under the treating physician rule."  Novaco v. Berryhill, No. 3:16-CV-1918 (VAB), 2019 WL 1404189, at *10 (D. Conn. Mar. 28, 2019) (citing Luna v. Colvin, No. 3:14-CV-145 (HBF), 2016 WL 4408987, at *5-7 (D. Conn. Aug. 17, 2016) (finding error and remanding where ALJ failed to apply treating physician rule to opinions of treating LCSW co-signed by treating psychiatrist); Shailer-Solak v. Berryhill, No. 3:16-CV-1681 (VAB), 2019 WL 1284814, *15 n.4 (D. Conn. Mar. 20, 2019) (noting that the parties did not dispute that the opinions of LCSW were made by treating source because they were co-signed by Plaintiff's treating psychiatrist and medication provider).  However, "[t]he co-signing acceptable medical source, however, must also be a 'treating' provider for the claimant; i.e., he or she must actually provide some level of regular treatment to the claimant."  Novaco, 2019 WL 1404189, at *10 (citing Luna, 2016 WL 4408987, at *6-7 (noting that co-signing psychiatrist had started treating plaintiff in 2010, prepared four treatment plans with LCSW, and provided medication management approximately 13 times between 2010 and 2012).  Moreover, the regulations advise that "because nonexamining sources have no examining or treating relationship with you, the weight

we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions."  20 C.F.R. § 404.1527(c)(3).

In granting Dr. Kang "little weight," the ALJ correctly indicated that it did "not appear that Dr. Kang every personally evaluated" plaintiff.  T. 616.  There is no indication in the record that Dr. Kang either treated or examined plaintiff.  The Court agrees with the Commissioner that, to the extent Dr. Kang is mentioned in plaintiff's medical records as supervising plaintiff's treatment or approving certain medical information, Ms. Kamps, Jennifer DiFabio, and PA Raymond were responsible for plaintiff's treatment.  See id. at 279-88, 330-36, 337-44, 351-58, 359-63, 452-56, 460, 466-506, 508-11, 1466-72, 1605, 1607, 1610-21, 1623-24, 1627-28, 1631-47, 1651-65, 1667-74, 1676-90; Dkt. No. 12 at 15.  Insofar as Dr. Kang's name does appear under "staff responsible" in medical records from the Brownell Center, the notations state that plaintiff "will manage meds safely as evidenced by reports in scheduled sessions."  T. 457, 465, 468; Dkt. No. 12 at 15.  The Court agrees with the Commissioner that "[a]ssuming Dr. Kang's three medication management notations were actual visits with [p]laintiff, and not just his review of reports completed by her therapists, the infrequency of the visits do not establish a treating relationship."  Dkt. No. 12 at 15-16 (citing inter alia Zukowski v. Berryhill, No. 8:16-CV-1537 (CFH), 2018 WL 1325875, at *11 (N.D.N.Y. Mar. 13, 2018) ("The ALJ properly accounted for the fact that, at the time he issued his medical source statement, Dr. Rigueur treated plaintiff on just two occasions, including the day of his evaluation. Courts in this Circuit have held that when a doctor has seen the plaintiff on only one or two occasions, the doctor's opinion is not entitled

29

to the weight of a treating physician because he did not provide plaintiff with the type of ongoing medical treatment that would define them as a 'treating physician.'") (citation and internal quotation marks omitted)).  As such, the ALJ properly afforded "little weight" to Dr. Kang's co-signature.

Further, the ALJ was not obligated to grant more weight to PA Raymond pursuant to the November 5, 2010 opinion.  As a physician's assistant, the regulations define PA Raymond as an "other source" "whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight."  Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order) (citing 20 C.F.R. § 416.913(d)(1)).  Courts in this Circuit have held that "the co-signature of a non-treating acceptable medical source alone does not transform the opinion of a treating non-acceptable medical source into one with controlling weight as a matter of law."  Novaco, 2019 WL 1404189, at *10.  In assigning the November 5, 2010 opinion "little weight," the ALJ stated that the limitations assessed were "not consistent with [plaintiff's] mental status exam and appear[ed] from the comments to be largely based upon [plaintiff's] subjective statements and complaints."  T. 616.  To be sure, the Second Circuit has held that "[t]he fact that [a treating physician] also relied on [a plaintiff's] subjective complaints hardly undermines his opinion as to her functional limitations, as [a] patient's report of complaints, or history, is an essential diagnostic tool."  Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) (quotation omitted).  However, the Court notes that PA Raymond failed to provide citations to "medical/clinical findings that support[ed] [her] assessment" other than plaintiff's

subjective complaints that work stress causes her to "lash out at everybody and wanna fight"; she "forget[s] everything that was said" to her; and she "just [didn't] want to be around" coworkers because she felt uncomfortable.  T. 431; but see Mojbel v. Comm'r of Soc. Sec., 385 F. Supp. 3d 199, 204 (W.D.N.Y. 2019) (concluding that the ALJ failed to provide good reasons for discounting the treating provider's opinion on the basis of the plaintiff's subjective reporting where the treating provider's "medical source statement specifically set[ ] forth the clinical findings that informed his opinion, including the MRIs of Plaintiff's lumbar spine that showed multiple herniated discs and physical examinations showing positive straight leg raising tests on the left, lumbar tenderness, and decreased range of motion.").  The Court finds that "this was a sufficient reason for the ALJ to discount the weight given to the opinion."  Thomas v. Berryhill, 337 F. Supp. 3d 235, 243 (W.D.N.Y. 2018) (concluding that the ALJ properly afforded the medical provider's opinion discounted weight where it was clear he had relied on the plaintiff's subjective complaints in assessing the limitations).

The ALJ has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)).  It is clear from the ALJ's overall decision that she appropriately

considered the evidence before her, including the opinions of record and plaintiff's medical records.

As such, the Court's review of the ALJ's overall decision indicates that she properly reviewed the evidence of record and provided sufficient explanation for her analysis. For the reasons above, the Court therefore finds that the ALJ's RFC determination (including her analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence.

### G. Appeals Council's Orders

Plaintiff next argues that the ALJ failed to account for all of the Appeals Council's orders on remand. Dkt. No. 11 at 23-25. Specifically, plaintiff argues that the ALJ failed to give appropriate consideration to Dr. Buchan's opinion, as well as plaintiff's subjective complaints. See id. Appropriateness of the comment aside, the ALJ did indicate that she discredited Dr. Buchan's opinions because they were unsupported by the objective medical evidence in the record, T. 614 — a statement that the Court found credible. See supra, at 23-24. Moreover, the Court agrees with the argument set forth by the Commissioner that the ALJ adequately accounted for plaintiff's subjective complaints throughout the decision, including ample discussion as to plaintiff's reported symptoms and her activities of daily living. See T. 610, 612, 615; Dkt. No. 12 at 17-19. As such, the Court concludes that ALJ accounted for the Appeals Council's order.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Erica M.'s motion (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: September 9, 2019
  Albany, New York

Christian F. Hummel
U.S. Magistrate Judge